UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

EDDIE FLINT,

          Plaintiff,

v.

UNKNOWN BROWN et al.,

          Defendants.
_____/

Case No. 1:25-cv-115

Honorable Ray Kent

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court will grant Plaintiff leave to proceed *in forma pauperis*. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States Magistrate Judge. (ECF No. 1, PageID.7.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under

longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States Magistrate Judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

consent from the defendants[; h]owever, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will partially dismiss Plaintiff's complaint for failure to state a claim for the reasons detailed below.

## Discussion

### I.    Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Gus Harrison Correctional Facility in Adrian, Lenawee County, Michigan. The events about which he complains occurred at the Muskegon Correctional Facility (MCF) in Muskegon, Muskegon County, Michigan. Plaintiff sues the following MCF correctional staff in their official and individual capacities: Lieutenant Brown, Deputy Warden Unknown Winger, and Correctional Officer Unknown Purcey. (Compl., ECF No. 1, PageID.2.)

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States Magistrate Judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

In Plaintiff's complaint, he alleges that on July 4, 2023, non-party Officer Brock "took 4 plastic containers containing [an] organic substance" from Plaintiff's cell.[2] (*Id.*, PageID.4.) Non-party Officer Caltagirone then came to Plaintiff's cell to conduct a shakedown, but did not remove any items from Plaintiff's cell. (*Id.*) Thereafter, non-party Officer Caltagirone wrote Plaintiff a class I substance abuse misconduct charge, stating: "I found 2 plastic containers containing [an] organic substance smelling of fermentation." (*Id.*) At Plaintiff's hearing on July 24, 2023, for the class I misconduct charge, Plaintiff told the non-party hearing officer that he "ha[d] a problem with who verified it," explaining that he "did not have any alcohol." (*Id.*) Ultimately, "the hearing officer dismissed the class I misconduct charge." (*Id.*) The next day, July 25, 2023, Plaintiff wrote a grievance about the matter. (*Id.*)

On August 3, 2023, Defendant Purcey "kicked [Plaintiff's] cell door open" at midnight, stating: "I'm going to write you a ticket because you beat my friend['s] substance abuse ticket and I'm going to make sure you can't beat it." (*Id.*, PageID.5.) In response, Plaintiff told Defendant Purcey that Plaintiff had "not do[ne] anything to [him]" and that Plaintiff was "going to write a grievance about [Purcey] retaliating against [Plaintiff]." (*Id.*) Defendant Purcey responded: "I don't care." (*Id.*) Defendant Purcey then wrote Plaintiff a misconduct ticket for destruction or misuse of property and disobeying a direct order, both of which are class II violations. (*Id.*; *see* Misconduct Report, ECF No. 1-4, PageID.14.)

On August 12, 2023, Defendant Brown presided over the hearing for these misconduct charges. (Compl., ECF No. 1, PageID.5.) At the hearing, Plaintiff asked Defendant Brown "to view [the] phone records of prisoner Gaulding so that [Plaintiff] could prove that the phone pin

---

[2] In this opinion, the Court corrects the capitalization and spelling in quotations from Plaintiff's complaint.

4

was never active or used the night of 8/3/2023 at 11:15pm." (*Id.*) Defendant Brown told Plaintiff that he would not be checking the phone records, stating that he had "known Purcey for years" and that he was finding Plaintiff guilty. (*Id.*; *see* Misconduct Hearing Report, ECF No. 1-6, PageID.16 (reporting that Plaintiff was found guilty of the destruction or misuse of property charge and that the disobeying a direct order charge was dismissed).) Plaintiff received fifteen days' loss of privileges as a sanction. (Misconduct Hearing Report, ECF No. 1-6, PageID.16.) That same day, Plaintiff "appealed the [guilty finding] to the Deputy Warden," presumably, Defendant Winger. (Compl., ECF No. 1, PageID.5.) On August 22, 2024, the "Deputy Warden denied the appeal." (*Id.*) Thereafter, on August 26, 2023, Plaintiff filed a grievance regarding Defendant Purcey's "fraudulent statement and retaliating/targeting and harassing [Plaintiff]" as related to the August 3, 2023, misconduct charges. (*Id.*)

Based on the foregoing allegations, the Court construes the complaint to raise claims under the First and Fourteenth Amendments to the United States Constitution, as well as under state law. (*See, e.g.*, *id.*, PageID.6.)[3] As relief, Plaintiff seeks monetary damages. (*Id.*, PageID.7.)

## II.     Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the

---

[3] Without providing any explanation, Plaintiff references the Sixth Amendment to the United States Constitution in his complaint. (Compl., ECF No. 1, PageID.6.) However, this Amendment has no applicability to the events in Plaintiff's complaint, and any intended claims pursuant to the Sixth Amendment would be subject to dismissal for failure to state a claim.

elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Non-Parties Discussed in the Complaint

In Plaintiff's complaint, he discusses the actions of several non-parties. (*See, e.g.*, Compl., ECF No. 1, PageID.4 (referencing non-party Officers Brock and Caltagirone, and an unnamed, non-party hearing officer).) These individuals are not identified as Defendants in either the case

caption of the complaint or the section of the complaint where Plaintiff lists the Defendants in this suit. (*See id.*, PageID.1, 2.)

Federal Rule of Civil Procedure 10(a) requires that a plaintiff "name all of the parties" in "[t]he title of the complaint." Fed. R. Civ. P. 10(a). Further, this Court has previously concluded that "[o]nly those individuals and entities identified in the caption of the complaint are properly considered defendants in an action, regardless of the complaint's other contents or allegations." *Jones v. Smith*, No. 1:10-cv-568, 2012 WL 726665, at *1 (W.D. Mich. Feb. 1, 2012), *R & R adopted*, 2012 WL 726621 (W.D. Mich. Mar. 6, 2012); *see also Brown v. Mich. Dep't of Corr.*, No. 1:22-cv-16, 2022 WL 2900888, at *1 n.2 (W.D. Mich. Jul. 22, 2022) (concluding that corrections officers identified as defendants in a particular count of the complaint, but not named in the caption or in the form complaint "list of parties" were not parties to the action). Accordingly, any intended claims against the non-party individuals discussed in the complaint will be dismissed for failure to state a claim upon which relief may be granted.

**B.  Official Capacity Claims**

Plaintiff sues Defendants in their official and individual capacities. (Compl., ECF No. 1, PageID.2.) A suit against an individual in his or her official capacity is equivalent to a suit against the governmental entity; in this case, the MDOC. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). The states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in

federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). Moreover, the State of Michigan (acting through the MDOC) is not a "person" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613, 617 (2002) (citing *Will*, 491 U.S. at 66).

Here, Plaintiff seeks monetary damages only. (Compl., ECF No. 1, PageID.7.) However, as noted above, the MDOC is not a "person" who may be sued under § 1983 for money damages. *See, e.g.*, *Lapides*, 535 U.S. at 617). Therefore, Plaintiff may not seek monetary damages against Defendants in their official capacities.

Accordingly, Plaintiff has failed to state a claim against Defendants in their official capacities upon which relief can be granted, and his official capacity claims against Defendants will be dismissed for failure to state a claim.

**C.     First Amendment Retaliation Claims**

The Court construes Plaintiff's complaint to raise First Amendment retaliation claims against all named Defendants. (*See* Compl., ECF No. 1, PageID.6 (referencing alleged "retaliatory violation[s]").)

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) the plaintiff was engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to show that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

8

With respect to the first element of a First Amendment retaliation claim, an inmate has a right to file "non-frivolous" grievances against prison officials on his own behalf, whether written or oral. *Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018); *Mack v. Warden Loretto FCI*, 839 F.3d 286, 298–99 (3d Cir. 2016). Here, Plaintiff alleges that he told Defendant Purcey on August 3, 2023, that he would be filing a grievance against Purcey regarding Purcey's statement that Purcey was "going to write [Plaintiff] a ticket because [he] beat" the substance abuse ticket that had been written by non-party Officer Caltagirone. (Compl., ECF No. 1, PageID.5.) Plaintiff also references filing at least two written grievances. (*See id.*, PageID.4, 5.) At this stage of the proceedings, these allegations are sufficient to suggest that Plaintiff engaged in protected conduct for purposes of his First Amendment claim.

Next, to establish the second element of a retaliation claim, a prisoner-plaintiff must show adverse action by a prison official sufficient to deter a person of ordinary firmness from exercising his constitutional rights. *Thaddeus-X*, 175 F.3d at 396. The adverseness inquiry is an objective one and does not depend on how a particular plaintiff reacted. The relevant question is whether the defendant's conduct is "*capable* of deterring a person of ordinary firmness"; the plaintiff need not show actual deterrence. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002). Finally, to satisfy the third element of a retaliation claim, Plaintiff must allege facts that support an inference that the alleged adverse action was motivated by the protected conduct.

As to Defendant Purcey, taking Plaintiff's factual allegations as true and in the light most favorable to him, as the Court is required to do at this time, although Plaintiff has by no means proven his retaliation claim, the Court will not dismiss Plaintiff's First Amendment retaliation claim against Defendant Purcey on initial review.

However, as to Defendants Brown and Winger, as explained below, Plaintiff's First Amendment retaliation claims against these Defendants fail at the third step. Plaintiff alleges that at the August 12, 2023, misconduct hearing for the destruction or misuse of property and disobeying a direct order misconduct charges, Plaintiff asked Defendant Brown "to view [the] phone records of prisoner Gaulding so that [Plaintiff] could prove that the phone pin was never active or used the night of 8/3/2023 at 11:15pm." (Compl., ECF No. 1, PageID.5.) Defendant Brown told Plaintiff that he would not be checking the phone records, stating that he had "known Purcey for years" and that he was finding Plaintiff guilty. (*Id.*; *see* Misconduct Hearing Report, ECF No. 1-6, PageID.16.) Plaintiff then "appealed the [guilty finding] to the Deputy Warden," presumably, Defendant Winger, and on August 22, 2024, the "Deputy Warden denied the appeal." (Compl., ECF No. 1, PageID.5.)

Assuming, without deciding, that the actions of Defendants Brown and Winger constituted adverse actions, Plaintiff's allegations of retaliatory motive are entirely conclusory. Although it is clear that Plaintiff disagreed with Defendant Brown's guilty finding, Plaintiff fails to allege any facts to suggest that Defendants Brown and Winger took their respective actions due to Plaintiff's protected conduct. Plaintiff alleges that Defendant Brown found him guilty due to Brown's friendship with Purcey, not due to Plaintiff engaging in any protected conduct. And, as to Defendant Winger, Plaintiff alleges no facts about Winger's motives, and thus, he necessarily fails to show that Winger denied Plaintiff's appeal due to Plaintiff's engagement in protected conduct. Instead, with respect to Defendants Brown and Winger, Plaintiff merely alleges the ultimate fact of retaliation without providing supporting factual allegations to even suggest that the alleged adverse actions were motivated by the protected conduct. Such "conclusory allegations of retaliatory motive 'unsupported by material facts'" do not state a claim under § 1983. *Harbin-Bey*

10

*v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005) (citation omitted); *see Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (holding that in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial" (internal quotation marks omitted)); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("[B]are allegations of malice on the defendants' parts are not enough to establish retaliation claims [that will survive § 1915A screening]." (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998))). Accordingly, Plaintiff's First Amendment retaliation claims against Defendants Brown and Winger will be dismissed for failure to state a claim.

### D.     Fourteenth Amendment Procedural Due Process Claims

The Court construes Plaintiff's complaint to raise Fourteenth Amendment procedural due process claims against all named Defendants regarding Plaintiff's August 12, 2023, class II misconduct conviction for destruction or misuse of property. (*See* Compl., ECF No. 1, PageID.5; *see also* Misconduct Hearing Report, ECF No. 1-6, PageID.16.)

"The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazzetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). To establish a Fourteenth Amendment procedural due process violation, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Analysis of a procedural due process claim involves two steps: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient . . . ." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (citations omitted).

In *Sandin v. Conner*, the Supreme Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause. 515 U.S. 472, 484 (1995). According to that Court, a prisoner is entitled to the protections of due

process only when the sanction "will inevitably affect the duration of his [or her] sentence" or when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 486–87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790–91 (6th Cir. 1995). In *Sandin*, the Court held that regardless of the mandatory language of the prison regulations, the inmate did not have a liberty interest because his placement in administrative segregation did not constitute an atypical and significant hardship within the context of his prison life. *Sandin*, 515 U.S. at 484; *see also Mackey v. Dyke*, 111 F.3d 460, 463 (6th Cir. 1997). Without a protected liberty interest, a plaintiff cannot successfully claim that his due process rights were violated because "[p]rocess is not an end in itself." *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983).

Here, at an August 12, 2023, misconduct hearing, Defendant Brown found Plaintiff guilty of destruction or misuse of property, a class II misconduct charge that Defendant Purcey issued Plaintiff on August 3, 2023. (*See* Compl., ECF No. 1, PageID.5.) Plaintiff received fifteen days' loss of privileges as a sanction. (Misconduct Hearing Report, ECF No. 1-6, PageID.16.) Plaintiff then appealed the guilty finding to Defendant Winger, and Winger "denied the appeal" on August 22, 2024. (Compl., ECF No. 1, PageID.5.) Plaintiff claims that this misconduct conviction violated his due process rights. (*See id.*)

However, Plaintiff does not allege that his August 12, 2023, misconduct conviction impacted the duration of his sentence, and he cannot allege this because the sanctions available in the MDOC disciplinary scheme do not affect the duration of an inmate's sentence. *See, e.g.*, *Thomas v. Eby*, 481 F.3d 434 (6th Cir. 2007) (discussing that the loss of disciplinary credits under the MDOC's disciplinary scheme does not affect the duration of a prisoner's sentence). And, the loss of privileges sanction that Plaintiff received, which entails the loss of certain out-of-cell

privileges, does not constitute an "atypical and significant hardship," as contemplated by *Sandin*. *Cf. Bazzetta*, 430 F.3d at 805 (concluding that a permanent, but reviewable, loss of visitation privileges did not "rise[] to the level of egregious conduct necessary to implicate the implicit guarantees of the Due Process Clause" (citing *Overton v. Bazzetta*, 539 U.S. 126, 134 (2003))); *Argue v. Hofmeyer*, 80 F. App'x 427, 429 (6th Cir. 2003) (finding that prisoners have no constitutional right to rehabilitation, education, or jobs). Therefore, Plaintiff fails to state a procedural due process claim regarding his August 12, 2023, misconduct conviction.

Moreover, to the extent that Plaintiff intended to hold Defendant Winger liable due to Winger's supervisory position, government officials, such as Defendant Winger, may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). And, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or appeal, or failed to act based upon information contained in a grievance or appeal. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).

The Sixth Circuit repeatedly has summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee*, 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have

13

>interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995)); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993). Here, Plaintiff fails to allege any facts showing that Defendant Winger encouraged or condoned the conduct of Winger's subordinates, or authorized, approved, or knowingly acquiesced in the conduct. And, Plaintiff's conclusory allegations of supervisory responsibility are insufficient to show that Defendant Winger was personally involved in the alleged violations of Plaintiff's constitutional rights. *See, e.g.*, *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers*, 368 F.3d at 888.

Accordingly, for all of the set forth above, Plaintiff's Fourteenth Amendment procedural due process claims against Defendants will be dismissed for failure to state a claim.

    **E.**    **State Law Claims**

In addition to Plaintiff's federal claims, he states that he is bringing state law claims pursuant to "MCL 791.252(H)." (Compl., ECF No. 1, PageID.6.)

As an initial matter, claims under § 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). Therefore, Plaintiff's assertion that Defendants violated state law fails to state a claim under § 1983.

Moreover, as explained below, Mich. Comp. Laws § 791.252 is inapplicable to the class II misconduct charges that the named Defendants were involved with, and thus, Plaintiff's claims against Defendants under Mich. Comp. Laws § 791.252 fail to state a claim. Specifically,

Plaintiff's claims against the named Defendants relate to class II misconduct charges; however, "[w]hile Class I Misconducts are considered 'major' misconducts and are 'subject to all hearing requirements set forth in MCL 791.252,' Class II and III Misconducts are considered 'minor' misconducts and are [only] 'subject to all requirements currently set forth in Department Administrative Rules and policy directives for minor misconducts.'" *Hamby v. Rogers*, No. 2:18-cv-154, 2019 WL 8231008, at *4 n.3 (W.D. Mich. June 27, 2019), *R&R adopted*, No. 2:18-cv-154, 2020 WL 1287908 (W.D. Mich. Mar. 18, 2020); *see, e.g.*, *Lakin v. Dep't of Corr.*, No. 305154, 2012 WL 2947906, at *1 (Mich. Ct. App. July 19, 2012). Therefore, because Mich. Comp. Laws § 791.252 is inapplicable to Plaintiff's claims regarding his class II misconduct charges, he fails to state a claim under Mich. Comp. Laws § 791.252 upon which relief may be granted.

## Conclusion

The Court will grant Plaintiff leave to proceed *in forma pauperis*. Having conducted the review required by the PLRA, the Court determines that Defendants Brown and Winger will be dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, the following claims: any intended claims against the non-party individuals discussed in the complaint; and Plaintiff's official capacity claim, Fourteenth Amendment procedural due process claim, and state law claims against remaining Defendant Purcey. Plaintiff's individual capacity First Amendment retaliation claim against Defendant Purcey remains in the case.

An order consistent with this opinion will be entered.

Dated: April 3, 2025               /s/ Ray Kent
                                   Ray Kent
                                   United States Magistrate Judge

15